IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ZACHIUS M. STEVENS, § <br> No. 199506, § <br> § <br> Plaintiff, § <br> § <br> v. §     5:23-CV-285-Z-BR <br> § <br> SHERIFF KELLY S. ROWE, *et al.*, § <br> § <br> Defendants. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**TO GRANT MOTIONS TO DISMISS**

Before the Court are the Motions to Dismiss Pursuant to Rule 12 of the Federal Rules of Civil Procedure filed by Defendants Kelly Rowe, Mike Reed and Cody Scott (the "Administrative Defendants") and Travis Rogers, Charles Robinson, Johnny Swires, Joshua Amalla, Jordan O'Neil and Alex Boyd (the "Officer Defendants"). (ECF 16, 17). The Magistrate Judge recommends that the District Judge GRANT the Motions, as set forth below.

**I. FACTUAL BACKGROUND**[1]

*Pro se* Plaintiff Zachius Stevens ("Stevens"), a prisoner at the Smith Unit of the Texas Department of Criminal Justice, filed this suit arising out of his stay at the Lubbock County Detention Center. He alleges that, while there, he was having a mental health crisis and threatening suicide. (ECF 1 at 7). He asked to have medical come to his cell to talk to him. Guards then told him to submit to hand restraints, but he refused due to having been assaulted in the past and him not feeling safe. (*Id.*). Stevens told the guards that they would have to "run the [Detention

---

[1]These background facts are taken from Plaintiff's Complaint and are assumed to be true for the purpose of evaluating the merits of the Motions.

1

Response] team" to remove him from his cell. (*Id.*). Guards then shot a pepper ball gun into the cell, despite knowing that Stevens had asthma and breathing problems. (*Id.*) They then entered the cell and began to punch him in the head. (*Id.*). He was hit in the back of the head so hard that it caused Defendant O'Neil to fall onto the bunk with Stevens. (*Id.*). Stevens was taken to the ground by the Officer Defendants, where restraints were applied to him. (*Id.*).

Stevens then was taken to a Violent Cell, where he remained for 24 hours. (*Id.*). During that time frame, he was refused water for 18 hours. (*Id.* at 7). He also was not taken to the bathroom or provided toilet paper. (*Id.* at 8). After being returned to his cell, his personal property was returned to him and he discovered that some of his legal papers were missing and others were torn. (*Id.*). He claims to still be suffering anxiety and sleepless nights after the incident. (*Id.* at 9).

He sues the Administrative Defendants in their individual capacities, alleging claims of failure to train, supervisory liability, municipal liability and negligence. (*Id.* at 4). He sues the Officer Defendants in their individual capacities on a variety of grounds stemming from the use-of-force incident. (*Id.* at 4-5). Defendants filed Motions to Dismiss pursuant to FED. R. CIV. P. 12(b)(6), alleging that Stevens failed to state a claim against them. Stevens did not respond to the Motions.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and footnote omitted). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements" do not establish facial plausibility. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 557).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). The Court also is mindful it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court ... create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr*., No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp*., No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002)).

Stevens failed to respond to the Motions; however, Defendants are not entitled to dismissal on this basis. The Fifth Circuit has said that, when the motion is dispositive, "[t]he mere failure to respond to a motion is not sufficient to justify a dismissal with prejudice." *Watson v. United States ex rel. Lerma*, 285 F. App'x 140, 143 (5th Cir. 2008).

### III. LEGAL ANALYSIS

A.     EIGHTH AMENDMENT/DELIBERATE INDIFFERENCE/ASSAULT.

Stevens asserts that the Officer Defendants used excessive force when removing him from his cell. It is clearly established that prison staff cannot cause the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The inquiry has two components: 1) an objective component that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the constitution; and 2) a subjective component that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8. Courts look to five nonexclusive factors to make this determination: 1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need for the application of force and the amount of force actually used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson*, 503 U.S. at 7). Courts may consider these factors in any order. *Id.*

    **1. The Extent of the Injury Suffered.**

The Eighth Amendment's prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10. Although a showing of "significant injury" is no longer required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have suffered at least

some form of injury." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314. "In *Williams*, for example, this court held that the loss of breath and dizziness suffered when the suspect was allegedly choked while an officer searched his mouth did not amount to an [sic] cognizable injury." *Id.* "This court stated that '[w]henever a detainee is physically searched by an officer, a physical confrontation inevitably results' and therefore concluded that fleeting dizziness, temporary loss of breath, and coughing did not rise to the level of a constitutional violation." *Id.* (citing *Williams*, 180 F.3d at 704). However, when force is employed and the resultant injury is unrelated to the necessary force required to restore order and is motivated instead by malice, such injury cannot be *de minimis*. *Id.*

Here, Stevens alleges that he suffered a pain behind his left eye, and swelling and pain to the back of his head. His injuries were treated with ibuprofen. (ECF 1 at 9-10). Courts have held that injuries of the type suffered by Stevens are relatively minor, and weigh against a finding of excessive force. *Contreras v. Wauson*, No. 5:21-CV-00038-C, 2023 WL 9508831, at *6 (N.D. Tex. July 5, 2023) (finding that "a small laceration above [the plaintiff's] eye requiring a couple stitches" was a *de minimis* injury); *Johnson v. Hill*, 514 F. Supp. 3d 958, 969 (S.D. Tex. 2021) (finding that a small laceration above a prisoner's eye, which was treated with stitches and ibuprofen, was a minor injury weighing against a finding of excessive force); *Pitman v. Collum*, No. 6:17cv321, 2018 WL 4572713, at *6 (E.D. Tex. Aug. 6, 2018) (finding that the plaintiff's injuries were *de minimis* when he suffered a "red and black bruise on the inside of his upper arm," "redness on his nose and face," "a thin red line around his neck," "a small laceration to his lower lip, a red and swollen eye, and a red/bloody sclera"), *R. and R. adopted*, No. 6:17cv321, 2018 WL

5

4565054. By alleging only a headache and eye pain that was treated by ibuprofen, Stevens has not alleged anything more than a *de minimis* injury.

### 2. The Need for the Application of Force.

Stevens admits in his Complaint that he refused to submit to handcuffs when asked, and that he told the Officer Defendants that he would not leave the cell. He told them that they would have to "run the team" to get him out. (ECF 1 at 7). Therefore, it is clear from the face of the Complaint that some force was needed in response to Stevens' refusal to leave the cell.

### 3. Relationship Between Need for Force and Amount of Force Used.

Stevens admits in his Complaint that he failed to comply with orders to submit to handcuffs and that the Officer Defendants would have to "run the team" to remove him from his cell. The Fifth Circuit "has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders." *Schneider v. Kaelin*, No. C. 12-233, 2013 WL 1867611, at *5 (S.D. Tex. Apr. 21, 2013) (citing *Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (per curiam)). Officials are justified in using some degree of force in "a good-faith effort to maintain or restore discipline" when a prisoner refuses to cooperate with legitimate directives of an official. *Gonzalez v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (finding "some degree of force" by officers was justified when inmate "refus[ed] to comply with the Officers' repeated orders to lie on the cell's floor" because "[d]isobeying orders poses a threat to the order and security of an institution"); *see Lara-Haynes v. Garcia*, No. 2:19-CV-056-Z-BR, 2021 WL 295841, at *7 (Jan. 6, 2021) (finding that "three strikes with a closed fist, when the Plaintiff was in the process of assaulting [an officer] by spitting on him and lunging toward him, is not excessive"). Stevens admits his refusal to comply with the Officer Defendants'

orders; this fact, combined with his statements that he suffered only *de minimis* injury, indicates that the Officer Defendants did not use excessive force.

### 4. The Threat Perceived by Officers.

Stevens admits that he was refusing to comply with orders and that the Detention Response Team would be required to remove him from the cell. (ECF 1 at 7). "This was not a random, unprovoked application of force; rather, it was an immediate response to a serious security issue." *Contreras*, 2023 WL at *6. It is clear from the face of the Complaint that the Officer Defendants perceived a legitimate threat and responded accordingly.

### 5. Efforts to Temper Force.

The Court cannot determine from the face of the Complaint whether, and to what extent, the Officer Defendants tempered their use of force. Therefore, the Court will assume for the purposes of this Motion that this factor supports Stevens' allegations.

In sum, however, the *Hudson* factors weigh against finding that the Officer Defendants acted with the intent to harm Stevens rather than to restore order and regain security. Therefore, Stevens has not stated a claim showing that his Eighth Amendment rights were violated.[2]

**B.     EQUAL PROTECTION CLAIM.**

Stevens next alleges that the Officer Defendants' conduct violated the Equal Protection clause. (ECF 1 at 4). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in

---

[2]To the extent that Stevens seeks to allege a stand-alone assault claim against the Officer Defendants, his Complaint also fails to state a viable cause of action. The Texas Tort Claims Act bars liability for intentional torts, and, as to negligent acts, immunity is waived only if a plaintiff is injured in situations inapplicable here. *Holland v. City of Houston*, 41 Supp.2d 678, 710-13 (S.D. Tex 1999); TEX. CIV. PRAC. & REM. CODE § 101.021.

a protected class." *Williams*, 180 F.3d at 705 (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir.1989)) (internal quotation marks omitted). "[The Supreme Court has] recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). However, "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Johnson*, 110 F.3d at 306 (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir.1988)) (internal quotation marks omitted). To the extent the Complaint alleges that the Officer Defendants discriminated against Stevens based on his race, Stevens has failed to provide sufficient facts to support his claim. He has not shown that the Officer Defendants treated him differently than they treated prisoners of other races such that Stevens was denied equal protection.

C.    **NEGLIGENCE CLAIM.**

Stevens also alleges an unspecified negligence claim against the Officer Defendants and the Administrative Defendants. However, a defendant's negligence is insufficient as a matter of law to state a claim for a constitutional violation. *See Oliva v. Rupert*, 555 F. App'x 287, 288 (5th Cir. 2014) (per curiam) (affirming dismissal of Eighth Amendment claims that officers were responsible for inmate's fall, holding that the "[inmate's] allegations against the two transporting officers state, at most, claims for negligence and [are] therefore not valid § 1983 claims"). Stevens fails to state a viable constitutional violation because negligence is not a valid basis for a Section 1983 claim.

### D. PROPERTY DAMAGE CLAIM.

Stevens also brings a property damage claim against Officer Defendant Swires, alleging that he took some of Stevens' legal papers and tore others. (ECF 1 at 8). "Prisoners have a cognizable constitutionally protected property interest in their personal property." *Eubanks v. McCotter*, 802 F.2d 790, 793–94 (5th Cir. 1986). Nevertheless, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post[-]deprivation remedy." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quotation marks and citations omitted). The Texas administrative and judicial systems allow prisoners to raise ordinary tort claims such as conversion or an administrative remedy for lost or damaged property. *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995); *Spurlock v. Schroedter*, 88 S.W.3d 733, 737 (Tex. App.—Corpus Christi 2002). Because Stevens has an adequate post-deprivation remedy under Texas law in that he has the right to sue for conversion in state court, he does not have a Section 1983 due process claim for damage to his personal property.

### E. FAILURE TO TRAIN CLAIM.

Stevens next alleges that the Administrative Defendants failed to train their employees correctly. To state a cause of action for failure to train, Stevens must allege that "1) the [defendants] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Thompson v. Upshur City*, 245 F.3d 447, 459 (5th Cir. 2001)). Stevens fails to allege the required elements.

To state an "inadequate training" claim, Stevens "must allege with specificity how a

particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Stevens fails to allege the training program to which he refers, and fails to allege how such training program is defective. Stevens also fails to allege a causal link between the alleged training failures and the injuries he suffered. Lastly, he fails to plead facts indicating that "the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). "'[A] pattern of similar constitutional violations by untrained employees is ordinarily' required to show deliberate indifference." *Pena*, 879 F.3d at 623 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

F.  **CONDITIONS OF CONFINEMENT CLAIM.**

Stevens alleges that he was kept in a Violent Cell for 24 hours and, for 18 of those hours, he was denied water. He further alleges that he was denied use of a toilet and toilet paper during his time in the cell. (ECF 1 at 8). To establish a constitutional violation based on the conditions of confinement, a prisoner must satisfy a two-part test, consisting of an objective and a subjective component. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). First, the prisoner must demonstrate the objective component of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Davis*, 157 F.3d at 1006 (internal quotations omitted). "Second, under a subjective standard, the prisoner must establish that the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Harper*, 174 F.3d at 720. To establish deliberate indifference, the prisoner must show that the defendants "(1)

were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998), *citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The continued refusal to provide an inmate necessary access to a bathroom for a significant period of time may rise to the level of a constitutional deprivation, but a single or temporary deprivation of toilet access does not generally give rise to an actionable constitutional claim. *Pierce v. Porter*, 2022 WL 2298455 (E.D. La. June 6, 2022) (collecting cases). Further, the inmate still must show that the denial of access involved indifference to a substantial risk of serious harm to his health or safety. *Farmer*, 511 U.S. at 837. In *Vacca v. Scott*, 119 F. App'x 678 (5th Cir. 2005), the Fifth Circuit considered the repeated denial of an inmate's request for access to a bathroom, which resulted in the inmate soiling himself and his clothing. The court found no constitutional violation under Section 1983 because the inmate did not allege an actual "risk to his present and future health." *Id*. at 678; *see also Mendoza v. Atwell*, No. 20-cv-42, 2020 WL 8514099, at *4 (S.D. Tex. Sep. 21, 2020) (defendant's actions were reprehensible in denying plaintiff access to the restroom, which resulted in plaintiff soiling himself, but plaintiff failed to allege an Eighth Amendment violation in the single incident where there were no allegations of physical injury); *Gonzalez v. Davis*, No. 18cv574, 2020 WL 5225674, at *3 (E.D. Tex. Jun. 11, 2020) (inmate failed to state a constitutional claim based on allegations that prison officer denied him access to a restroom on one occasion, which forced inmate to defecate on a shirt); *Decker v. Dumbar*, 633 F. Supp. 2d 317, 341-42 (E.D. Tex. 2008) (inmate who urinated on himself after being denied access to a restroom did not suffer more than *de minimis* physical injury).

In this case, Stevens describes only a single incident and does not allege that the temporary

denial of access to the bathroom caused him any physical harm or risk to his health. This generalized claim of discomfort and emotional upset is insufficient to state an Eighth Amendment violation. *See Vacca*, 119 F. App'x at 678 (citing *Wilson v. Lynaugh*, 878 F.2d at 849); *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (pain and discomfort for which an inmate seeks no medical treatment is *de minimis* and insufficient to support an Eighth Amendment claim). Even if it were sufficient to cause him to seek medical treatment, however, Stevens has failed to indicate that he suffered physical injury or that the defendants acted with intentional indifference to a risk of a serious physical injury, as required under *Farmer*. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citing *Farmer*, 511 U.S. at 834).

For similar reasons, Stevens' claim regarding a lack of drinking water also states no cognizable claim because he alleges no concomitant physical injury. *See Palomo v. Collier*, No. 2:23cv37, 2023 WL 6014400 (S.D. Tex. Apr. 14, 2023), *R. & R. adopted,* 2023 WL 5610908 (S.D. Tex. Aug. 30, 2023) (lack of water and toilet caused constipation and dehydration; harms were *de minimis* and temporary so plaintiff was barred from recovery); *Tate v. Gusman*, 459 F. Supp. 2d 519 (E.D. La. 2006), *R. & R. adopted,* 459 F. Supp. 2d 519 (E.D. La. 2006) (recovery barred because no physical injury alleged when inmate was without drinking water, food, or a bathroom due to Hurricane Katrina).

### G.    MUNICIPAL LIABILITY.

Lastly, Stevens alleges a municipal liability claim against the Administrative Defendants. The Supreme Court has held a municipality can be liable under Section 1983 if "the action that is alleged to be unconstitutional implements or executes a policy ... officially adopted and promulgated by that [municipality's] officers." *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978). To state a *Monell* claim, a plaintiff must identify: "(1) an official policy

(or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Because Stevens has sued the Administrative Defendants in their individual capacities only, however, he cannot state a claim for municipal liability against the Administrative Defendants as a matter of law.

Even assuming that Stevens had intended to sue the Administrative Defendants in their official capacities, however, he has not stated a claim against them. An "official policy or custom" is most clearly established through a formal directive officially adopted and promulgated by a policymaker. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *rev'd on other grounds*, 739 F.2d 993 (5th Cir. 1984). In the absence of a formal directive, a plaintiff may instead point to "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Pineda*, 291 F.3d at 328 (quoting *Webster*, 735 F.2d at 841). Generally, a custom is established by showing a pattern of similar conduct that has "occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 608 (W.D. Tex. 2023) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)). Such a pattern "requires similarity and specificity"— past incidents must be described with specificity and sufficiently similar to the unconstitutional conduct complained of by a plaintiff. *Id.* (quoting *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

Stevens alleges no formal directive officially adopted and promulgated by a policymaker,

nor does he allege a pattern of conduct that "is so common and well settled as to constitute a custom that fairly represents municipal policy." *Pineda*, 291 F.3d at 328. Stevens claims that the Officer Defendants "did everything they [were supposed] to do" when they shot pepper spray into his cell, entered and began to punch him. (ECF 1 at 7). Construing the statement broadly, he could be alleging that the non-movant defendants were acting pursuant to either a formal directive or a pattern of conduct sufficient to represent municipal policy. He provides no further information as to the challenged policy. "The description of a policy or custom ... cannot be conclusory[.]" *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). Stevens needs only to plead "the specific topic of the challenged policy" to satisfy this requirement. *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 844 (S.D. Tex. 2011). However, he has failed to do so.

More importantly, Stevens alleges no connection between the policy purportedly followed and any of the Administrative Defendants. He does not allege that the Administrative Defendants were part of the team that allegedly used excessive force on him, nor does he allege that they created the unspecified policy of which he complains.

### H. SUPERVISORY LIABILITY CLAIM.

Stevens alleges that Officer Defendants Rogers and Robinson are liable as the supervisors of the other Officer Defendants who entered his cell and allegedly used excessive force on him. He also alleges supervisory liability against the Administrative Defendants for the Officer Defendants' conduct. (ECF 1 at 4). It is well established that supervisory officials are not liable for the acts of their subordinates unless (1) they affirmatively participated in an act that caused a constitutional deprivation, or (2) they implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A prisoner must sufficiently allege facts

showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under Section 1983, as prison supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. A plaintiff can prove "a government's policy or custom" through methods other than reference to formal policy, such as showing the existence of an unconstitutional practice that is so "persistent and widespread" as to constitute a *de facto* policy or custom. *Monell*, 436 U.S. at 690–91, 694. A plaintiff faces a high burden when claiming a level of pervasiveness that is sufficient to attribute an informal policy to a government entity or supervisory official. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."). Further, even if a plaintiff can prove implementation of a policy, supervisory liability only exists if "the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotation marks omitted) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)).

As stated above, Stevens has not stated a viable Section 1983 claim against any Defendant. He, therefore, cannot state a claim for supervisory liability. *See Mouille*, 977 F.2d at 929; *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of [appellant's] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); *Gibbs v. King*, 779 F.2d 1040, 1046 n.6 (5th Cir. 1986) ("There is no supervisory liability without primary liability."); *Taylor v. Hale*, No. 3:07-CV-1634-L, 2008 WL 4449502, at *8 (N.D. Tex. Sept. 30, 2008) ("[E]ven if [p]laintiff were to adequately set forth an unconstitutional policy or custom, his claim fails as a matter of law because the court has found that there is no underlying constitutional violation."); *Campbell v. Harris*, No. 3:96CV3220L, 2000 WL 349746, at *8 (N.D. Tex. Mar. 31, 2000) ("When there is no underlying constitutional violation, the policy

becomes irrelevant and is 'quite beside the point.'") (quoting *Los Angeles v. Heller*, 475 U.S 796, 799 (1986)), *aff'd*, 31 F. App'x 152 (5th Cir. 2001).

I. **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

Qualified immunity protects government officials from suit and liability for civil damages under Section 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam), *citing Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001).

"When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation to carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019). "Qualified immunity is a two-step process. The first [step] asks whether the defendant violated the plaintiff's constitutional rights. The second step adds the protection for the defendant that liability attaches only if the right was clearly established" at the time the violation occurred. *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018). The Court may address either or both prongs. *See Pearson v. Callahan*, 555 U.S. at 242.

While the Court accepts all well-pleaded facts as true and in a light favoring the plaintiff, the Court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citation omitted). Stevens did not respond to the Motion; therefore, he has not met his burden to show that qualified immunity does not apply. As set forth above, his Complaint fails to allege a constitutional violation

committed by any of the Defendants. Therefore, the Officer Defendants and the Administrative Defendants are entitled to dismissal of the claims against them pursuant to Rule 12(b)(6) based upon their affirmative defense of qualified immunity.

### IV.   LEAVE TO AMEND

The Court last considers whether Stevens should be given leave to amend his Complaint. Courts "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). A court may deny leave to amend for any "substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citing *United States ex rel. Steury v. Cardinal Health, Inc*., 625 F.3d 262, 270–71 (5th Cir. 2010)). Amendment is futile if any "amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co*., 234 F.3d 863, 873 (5th Cir. 2000) (collecting cases). Thus, the standard for whether amendment would be futile is "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citations omitted).

As per the Court's scheduling order, the Officer Defendants submitted a video of the relevant incident, but asked the Court to not consider it if such consideration would cause the Court to convert their Motion to Dismiss to a Motion for Summary Judgment.[3] (ECF 17 at 6). The video was not used in evaluation the Motions because the Complaint was sufficiently clear and detailed to determine the factual circumstances giving rise to Stevens' causes of action. However, the video was used solely for the purpose of determining whether amendment would be futile in this case.

---

[3]Use of video in the Rule 12(b)(6) context does not automatically require conversion to a Motion for Summary Judgment. *See Sligh v. City of Conroe*, 87 F.4th 290 (5th Cir. 2023) (using video provided by defendants and referenced by plaintiff in her complaint to evaluate a motion to dismiss; in the event of a contradiction between the video and the complaint, the video controls). Stevens referenced the video in his Complaint. (ECF 1 at 9). The video corroborates Stevens' version of events, but his version does not state a constitutional violation for the reasons stated herein.

After viewing the video, the Court has determined that Stevens' Complaint provides an accurate description of the use-of-force incident, such that amendment would be futile because amendment could not truthfully alter the factual bases for Stevens' claims, as set forth above.[4] Leave to amend is not necessary when the plaintiff already has pleaded his best case. *Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). However, leave to amend should be granted as to Stevens' Equal Protection claim, in that it conceivably could be cured by amendment.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that the Motions to Dismiss (ECF 16, 17) be GRANTED, and that all of Stevens' claims, other than his Equal Protection claim, be DISMISSED with prejudice. The Magistrate Judge further recommends that Stevens' Equal Protection claim be DISMISSED WITHOUT PREJUDICE and that he be given leave to amend the claim within 20 days of the District Court ruling on this FCR.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 17, 2024.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court recognizes that a questionnaire was not served nor a *Spears* hearing held in this case. However, because the video confirms that Stevens' description of the use-of-force incident was accurate, neither a questionnaire nor a *Spears* hearing would have aided him in creating a cause of action where none existed.

## **\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).